1998 OK CIV APP 176

**In the Matter of H.M. and J.P.M., Alleged Deprived Child(ren) Under 18 Years of Age.**

**John Paul McPherson, Appellant,**

**v.**

**State of Oklahoma, Appellee.**

**No. 90,958.**

Court of Civil Appeals of Oklahoma, Division 3.

Nov. 10, 1998.

Ronald L. Boyer, McAlester, Oklahoma, for Appellant.

Max E. Moss, Assistant District Attorney, McAlester, Oklahoma, for Appellee.

## OPINION

ADAMS, Judge:

¶1 John Paul McPherson (Father) appeals the termination of his parental rights to his children, J.P.M. and H.M., pursuant to 10 O.S.Supp.1995 § 7006–1.1(A)(8). The children were removed from the family home and placed in foster care after being adjudicated deprived in 1995. Their mother's parental rights were terminated prior to the proceedings terminating Father's rights.

¶2 In these proceedings, the State of Oklahoma had the burden of proving, by clear and convincing evidence, that the parent-child relationship should be severed. *A.E. v. State*, 1987 OK 76, 743 P.2d 1041. Under § 7006–1.1(A)(8), parental rights may be terminated if:

... all of the following exist:

a. the child has been adjudicated deprived, and

b. custody of the child has been placed outside the home of a natural or adoptive parent, guardian or extended family member, and

c. the parent whose rights are sought to be terminated has been sentenced to a period of incarceration of not less than ten (10) years, and

d. the continuation of parental rights would result in harm to the child based on consideration of the following factors, among others: the duration of incarceration and its detrimental effect on the parent/child relationship; any previous incarcerations; any history of criminal behavior, including crimes against children; the age of the child; the evidence of abuse or neglect of the child or siblings of the child by the parent; and the current relationship between the parent and the child and the manner in which the parent has exercised parental rights and duties in the past, and

e. termination of parental rights is in the best interests of the child.

¶3 Father does not dispute that the children were adjudicated deprived, or that custody was placed outside of the immediate or extended family. He also does not dispute that he was sentenced to a period of incarceration for not less than ten years. Instead, Father argues that the State did not prove by clear and convincing evidence that termination of his parental rights was in his children's best interest and did not present sufficient evidence of the factors listed in § 7006–1.1(A)(8)(d). He argues he should be allowed to work on a plan to correct the conditions which led to the children being deprived and that the only thing preventing that is his prison term. He also argues that though sentenced to a ten year term, he might be released sooner.

¶4 According to *Matter of J.M.*, 1993 OK CIV APP 121, ¶5, 858 P.2d 118, 120–121,

[t]ermination of parental rights cases are created by statute. *Matter of Christopher H.*, [1978 OK 50, ¶7, 577 P.2d 1292,] at 1293. They are triable to a jury. By analogy to common law cases where jury is waived, we must affirm a trial judge's de-

termination of the facts because, if it is supported by any competent evidence, it bears the force of a verdict rendered by a well-instructed jury. *Bradley v. Clark*, [1990 OK 73,] 804 P.2d 425 (Okl.1990). The findings of a trial court sitting without a jury are entitled to the same weight that would be given verdict by a jury and if there is any evidence, including reasonable inferences therefrom, tending to support the findings, the trial court's judgment will not be disturbed on appeal. *Maras v. Smith*, [1966 OK 231,] 420 P.2d 483 (Okl. 1966).

Applying this standard, we must affirm if the record contains any competent evidence from which the trial court could have determined that the State satisfied its burden with clear and convincing evidence. With these standards in mind, we review the record on appeal.

¶ 5 The State presented evidence of the injuries which resulted in the children being removed from their home and Father's conviction. Both children had bruises on their bodies which were not consistent with the type of injury a child might receive from normal rough and tumble play and for which Father had no explanation. Father continued to maintain that he had been sitting next to his son, turned to "pat" the child on the shoulder while playing and accidentally contacted his son's face. The result, a hand-shaped bruise on the child's face and swelling significant enough for a fracture to be suspected (though ultimately not found to be present), does not jibe with Father's minimization of his own actions.

¶ 6 Father differentiates this case from *Matter of K.L.H.*, 1993 OK CIV APP, 858 P.2d 1296, by pointing out that there was no pattern of abuse and no indication of earlier abuse of children by Father. We are not persuaded that the State was required to make such a showing for termination to be proper. The issue regarding pattern of abuse was relevant in *K.L.H.* because of the statutory section being applied, 10 O.S.Supp. 1987 § 1130(A)(5)(b), a provision not at issue here.

¶ 7 When removed from the family home, Father's son was two years old and his daughter was three. The State presented evidence that the children exhibited social delays, were withdrawn and froze if they felt threatened, had symptoms akin to post traumatic stress disorder, and that reunification with Father would have a negative effect upon them. They were "low functioning," lacked age appropriate family living skills, and because of their cognitive impairments they were not able to appreciate either who their parents were or the fact of Father's incarceration.

¶ 8 As to Father's current relationship with the children, a child welfare specialist testified that it was not the usual practice of the Department of Human Services (DHS) to transport children to a prison to see their parents and Father had not seen the children since being incarcerated. However, there is no evidence of or assertion that Father ever requested visitation with the children. During the three years between the hearing and the removal of the children, Father wrote to them and a DHS employee testified that the letters were read to the children.

¶ 9 Father's exercise of parental rights in the past was also examined. In a statement taken shortly after the incident, which was admitted into evidence, Father first claimed he did not strike his son in anger, but later conceded he was upset "about the people were I work at" at the time. At hearing he claimed he was not mad at anyone at work and the statement otherwise was a fabrication. He denied that he had a problem with his anger before his incarceration and stated he only took anger management classes while incarcerated because it "was on my chart to take," though he did think the classes have helped him and would let him "help someone else on down the line." Thus, Father attempted to minimize the effect of his own past conduct.

¶ 10 Contrary to Father's claim that there was no evidence that he had failed to care for his children any less "than any other parent would," a physician who examined the boy when DHS assumed custody testified the child was underweight for his age, and exhibited a condition described as "failure to

thrive." Both the examining physician and a child guidance specialist testified to observing multiple insect bites on his daughter. Father's convictions were based upon his pleas of guilty to counts that he intentionally injured or used unreasonable force as to both children.

¶ 11 The trial court heard testimony that the reunification of the children with Father could re-traumatize them and that it was in the children's best interest not to be returned to his custody. Father suggested that he could receive counseling to correct any problems, but a licensed professional counselor testified that "the problems are so severe that they're not likely to be corrected by counseling."

¶ 12 We do not concur with Father's argument that the trial court failed to properly consider the factors set forth in § 7006–1.1(A)(8). The trial judge, who sees the witnesses, observes their demeanor, and hears their testimony is in a better position to judge the true facts than an appellate court is by an examination of the record. *Potter v. Nix*, 180 Okla. 196, 69 P.2d 48 (1937). The trial judge, by being confronted with the parties and the witnesses, was in a much better position to assess the credibility of those witnesses than is this Court from "the dry, printed words in the record." *Perry v. Perry*, 1965 OK 160, ¶ 5, 408 P.2d 285, 287. Father has not shown from the record that the trial court failed to consider all of the appropriate factors presented by the evidence.

¶ 13 The record contains competent evidence from which the trial court could reasonably conclude that the State had sustained its burden of proving by clearing and convincing evidence the existence of all of the elements contained in § 7006–1.1(A)(8), including showing that termination was in the best interest of the children. Accordingly, the trial court's judgment is affirmed.

AFFIRMED.

HANSEN, J., and BUETTNER, P.J., concur.