1999 OK CIV APP 134

STATE of Oklahoma ex rel. DEPART-
MENT OF PUBLIC SAFETY, Pe-
titioner/Appellant,

v.

1985 CHEVROLET BLAZER, Vin No.
1G8CT18B8F825A742, TX Tag # 2465TZ;
One Technophone Cellular Telephone,
Mode MC915A, Serial # 216464; One Di-
amond Telephone Cellular Telephone,
Serial # A04607; One Glock Model 19
19mm MZ270; and One Glock Model 17
9mm MZ550; Respondents,

and

Jeanette Young and D.L. Fritz, Real
Parties in Interest/Appellees.

No. 91, 238.

Court of Civil Appeals of Oklahoma,
Division No. 1.

May 13, 1999.

As Corrected June 2, 1999.

Rehearing Denied July 9, 1999.

Lisa McLaughlin–Molinsky, Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, for Appellant.

Michael L. Gardner, Joe Farnan, Law Offices of Joe Farnan, Purcell, Oklahoma, for Appellees.

## OPINION

ADAMS, Judge:

¶1 Department of Public Safety (DPS) appeals a trial court order denying forfeiture of a 1985 Chevrolet Blazer and property in it. Because we conclude the trial court reached the correct legal result as to Appellee Young, we affirm that portion of the trial court's order. As to Appellee Fritz, we conclude the trial court's order was incorrect and reverse that part of the order, allowing forfeiture of whatever interest Fritz may have in the property which is the subject of these proceedings.

## FACTS

¶2 It is undisputed that Young is the registered owner of the Blazer. Both she and Fritz filed claims to the property involved in this case. According to DPS, the property was used by Fritz and others in a conspiracy to transport cocaine. At the time in question, Fritz was a passenger in the Blazer, but Young was not present. According to testimony from Trooper Flower of DPS, Fritz and others were traveling on Interstate 35 in tandem with a Jeep. Flowers observed both vehicles exceeding the speed limit by approximately five miles per hour.

¶ 3 Because there were several individuals in both cars and they were African–American, Trooper Flowers testified he was concerned that the occupants might be "gang bangers" and requested back up before stopping the vehicles. With assistance, Flowers stopped the vehicles. A drug dog was called and "hit" on both vehicles. Both vehicles were searched.[1] DPS attempted to prove cocaine was found in the Jeep, and introduced evidence that Fritz had plead guilty to charges of "conspiracy" to commit the crime of "UNLAWFUL POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE" arising out of this incident, using the Jeep. However, Fritz did not testify, and no other evidence was admitted in this action to demonstrate any controlled dangerous drug was in either vehicle.

## ANALYSIS

■ ¶ 4 DPS raises an evidentiary issue common to the interest of both Appellees when it argues that the trial court erred in refusing to admit a Criminalistics Examination Report purportedly from the Oklahoma State Bureau of Investigation (OSBI Report). According to this report, one of the substances found in the Jeep was cocaine, and one of the substances found in the Blazer was marijuana.[2] The trial court did not admit this report on the basis of Appellees' hearsay objection.

¶ 5 Without question, DPS was attempting to use the report to prove that the substance found in the Jeep was a controlled dangerous substance. It did not call the author of the report to testify. The report was a statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and was hearsay. 12 O.S.1991 § 2801(3). DPS has not argued that the report comes within in any of the "definitional exclusions" or is statutorily "not hearsay" under 12 O.S.1991 § 2801(4). Nor has DPS argued that the report comes within any of the exceptions to hearsay outlined in §§ 2803 and 2804.

¶ 6 According to DPS, the report was admissible because Fritz had already plead guilty to the charge of conspiracy to possess cocaine with intent to distribute. Although DPS argues this plea is "collateral estoppel" on the issue of whether the Jeep contained cocaine it has cited no authority to establish how the application of this principle makes a hearsay report admissible. If "collateral estoppel" applies, it would only prevent those parties bound from disputing the facts established by the guilty plea and conviction based on that plea. The trial court did not err in excluding the OSBI Report.

### Young's Interest

■ ¶ 7 In order to establish the Blazer and the personal property found therein were used in furtherance of the conspiracy to distribute cocaine, DPS relies upon Fritz's guilty plea establishing those facts and says "collateral estoppel" applies. Under this doctrine, also known as "issue preclusion," once a court decides an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate the decided issue in an action brought on a different claim. The doctrine may not be invoked against a party or privy who did not have a "full and fair opportunity" to litigate the critical issue in the previous case. *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, 946 P.2d 662.

■ ¶ 8 However, Young was not a party to the criminal case against Fritz, and DPS has not argued how she was his "privy." Fritz's plea has no preclusive effect on Young. Without that evidence, DPS failed to demonstrate that, as to Young, the Blazer and the other personal property were connected with possession of a controlled dan-

---

1. The record, although somewhat confusing, seems to support the conclusion that the Blazer was searched as a result of a voluntary consent. It appears, however, that the Jeep was ultimately the subject of a search warrant. Neither of the Appellees argued that the search was invalid because it was warrantless.

2. It appears likely that the quantity of marijuana allegedly found in the Blazer was insufficient to support a "distribution charge."

gerous substance with an intent to distribute. The trial court correctly concluded Young's interest in the Blazer and the personal property therein was not subject to forfeiture.

### Fritz's Interest

■ ¶ 9  We may not so conclude with regard to Fritz's interest.  Fritz was a party to the criminal case in which he pled guilty to an information which charged him on the date he was a passenger in the Blazer with participating in a conspiracy with the occupants of the Jeep to possess cocaine with the intent to distribute.  Based on that plea he was convicted as charged.  Issue preclusion bars him from relitigating those factual issues which were necessarily determined in the criminal case adverse to him.  *See Lee v. Knight,* 1989 OK 50, 771 P.2d 1003.  Unless one of the other reasons given by the trial court for denying forfeiture is valid as to Fritz, we must reverse the order refusing to forfeit the interest he claimed in the property.

¶ 10  The trial court ruled that evidence gained in the search of the vehicles was inadmissible because the stop was "pretextual."  The trial court concluded that the trooper did not stop the Jeep and the Blazer because the drivers were speeding, but because he suspected they were gang-hangers transporting drugs.  There was no dispute in the record that the trooper observed both vehicles exceeding the speed limit, and the trial court did not indicate a disbelief of that fact.  Rather, the trial court concluded that a trooper would not have ordinarily made a traffic stop of a vehicle exceeding the speed limit by only five miles an hour.

■ ¶ 11  Even if we were to conclude that some violation of Fritz's fourth amendment right against unreasonable searches and seizures survived his guilty plea, which we need not decide, we must conclude the trial court erred in determining that the trooper's subjective motive for stopping vehicles made the stop and any subsequent search illegal.  *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), firmly rejected the concept that "the constitutional reasonableness of traffic stops depends on the actual motiva-

tions of the individual officers involved."  *Whren* also rejected the approach adopted by the trial court here that a search made pursuant to a traffic stop for an observed traffic violation which would not have ordinarily been made but for some subterfuge motive violated the fourth amendment.  Under *Whren*'s holding, because the trooper had probable cause to stop the vehicles for speeding, the initial stop was not illegal, and any reasonable search pursuant to that stop did not violate Fritz's fourth amendment rights.

¶ 12  The Oklahoma case relied upon by the trial court also supports this conclusion.  In *Skelly v. State,* 1994 OK CR 55, 880 P.2d 401, the Court was confronted with the argument that a traffic stop initiated because a tail light was out was pretextual.  Concluding that the traffic violation provided probable cause for the initial stop, the Court concluded it could therefore not be considered pretextual.

■ ¶ 13  *Skelly* also demonstrates the error of the trial court in holding that the search was unreasonable because the troopers "detained the suspects and suspect vehicles at roadside for a long period of time while waiting for a drug dog."  The only evidence on time in this record indicates it took about 15 minutes for the drug dog to arrive at the scene.  In *Skelly,* the suspects waited approximately twenty minutes for the dog team to arrive, and the Court found that response time completely reasonable under the circumstances and not violative of the fourth amendment.

■ ¶ 14  Finally, we must conclude the trial court erred in finding that the forfeiture would be barred as to Fritz because of double jeopardy.  *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549, held that civil forfeitures do not constitute punishment for purpose of the double jeopardy clause.  *See also, State v. Ford F–150 Pickup,* 1994 OK CIV APP 162, 888 P.2d 1036.

### CONCLUSION

¶ 15  The trial court correctly concluded that DPS had not presented sufficient evi-

dence to authorize forfeiture of Young's interest in the Blazer and the property therein. However, Fritz was barred by issue preclusion from litigating whether he was using the Blazer as part of a conspiracy to possess a controlled drug with the intent to distribute, and no violation of the fourth amendment has been shown. Accordingly, the trial court's judgment is affirmed as to Young's interest in the property and reversed as to Fritz's interest. The case is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

HANSEN, P.J., concurring in part and dissenting in part with separate opinion; CARL B. JONES, C.J., concurs.

CAROL M. HANSEN, Presiding Judge, concurring in part, dissenting in part:

¶1 I concur with the majority that the trial court was correct in denying forfeiture of the Blazer and other property belonging to Young. However, I dissent to that part of the decision reversing the trial court's finding as to Fritz.

¶2 The officer stated he stopped the two vehicles originally clocked at 70 mph in a 65 mph zone. However, the vehicles had slowed to 55 mph at the time of the actual stop. Officers called for the drug dogs who alerted on one of the vehicles, a jeep. The officers eventually found cocaine in the jeep. That jeep is not involved in this action.[1]

¶3 Officers found no cocaine in the Blazer, only a small amount of marijuana, acknowledged by State as not enough to warrant a charge of intent to distribute, thus not enough to warrant forfeiture.[2]

¶4 State filed a notice of seizure and forfeiture of the property involved herein, alleging it was used by the occupants of the vehicles while possessing marijuana and that the Blazer was used to transport a controlled

dangerous substance for the purpose of distribution. Young and Fritz, through their attorney, filed an answer and a motion to suppress claiming the stop and the resulting search and seizure were unlawful. They claimed any marijuana was not being transported with the intent to distribute, thus the vehicle was not subject to seizure and forfeiture. State did not respond to the motion.[3]

¶5 At the bench trial, State presented only one witness, the officer who had stopped the vehicles.[4] The only other evidence submitted to prove State's claim was the guilty plea by Fritz.

¶6 The officer testified he followed the two vehicles without stopping them because they were in tandem and the occupants were black. He thought they might be "gang hangers." He personally did not search the vehicles or make an arrest.

¶7 Based on the testimony of the officer, the trial court found the stop was a pretext and without probable cause. It ordered both Young and Fritz have judgment for possession and return of their property. In my view the trial court clearly did not believe the officers stopped the Blazer for speeding, but rather because of the ethnic makeup of the persons in the two vehicles. The trial judge, who sees the witnesses, observes their demeanor and hears their testimony is in a better position to judge the true facts than this Court in its examination of the record. The trial judge by being confronted with the parties and the witnesses, was in a much better position to assess the credibility of the witness than is this Court from the "dry, printed words in the record." State has not shown from the record that the trial court failed to consider all of the appropriate factors presented by the evidence. *McPherson v. State (In re H.M.)*, 1998 OK CIV APP 176, 970 P.2d 1190.

¶8 Where there is any competent evidence reasonably tending to support the

---

1. The jeep was previously forfeited without objection.

2. Simple possession of marijuana does not trigger the forfeiture provisions of 63 O.S.1994 Supp. § 2–503. *State v.1985 GMC Pickup*, 1995 OK 75, 898 P.2d 1280.

3. The record does not show the trial court ever ruled on this motion.

4. The officer called for backup and another officer was present when the vehicles were stopped.

judgment, this Court will not disturb it on appeal. *King v. Halliburton Co.,* 1991 OK CIV APP 34, 813 P.2d 1055. Here the trial court made extensive findings of fact and law in its journal entry. I would affirm its entire order pursuant to 12 O.S.1995 Supp .Ch. 15, App.