OPINION OF THE COURT
James M. Kindler, J.
Defendant, charged with criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and related offenses, moves in an omnibus motion to suppress a gun recovered from the waistband of his pants and statements he made to law enforcement officials, after the car in which he was a passenger was stopped by the police. A Dunaway/Mapp/Huntley hearing was held on June 11, 12 and 13, 2013, at which Sergeant Brian Holshek, of the New York City Police Department, testified for the People. Defendant presented no evidence.
Based on the evidence adduced at the hearing, and for the reasons discussed below, defendant’s motion to suppress the firearm and the oral statements that he made to the police at the scene is denied.
Findings of Fact
The court credits the testimony of Sergeant Holshek and makes the following findings of fact:
On December 18, 2011, at approximately 1:00 a.m., Sergeant Holshek (who, at the time, was a police officer assigned to the 44th Precinct) and his fellow officers, Michael Greaney and Eric Miller, were on patrol in plain clothes and an unmarked car, in *856 the area of Webster Avenue and East 173rd to 174th Streets, in the Bronx. They had just completed a traffic stop of a car and were walking back to their car, an unmarked police vehicle stopped in the roadway. Holshek and his partners noticed defendant’s car, a green two-door Honda Accord,[1] stopped at a red light on Webster Avenue. The officers were about 20 yards in front of the Honda. While the Honda was stopped at the light, Holshek saw the driver get out of the car and switch positions in the car with the driver’s side rear passenger. When the light turned green, the car sped off, causing the car’s tires to screech; the music coming from the car and the car’s muffler were each also very loud. The Honda, which was “pretty beat up,” was making enough noise to be heard blocks away, noise that Holshek believed was “unreasonable,” meaning to him that it would be “a bothersome noise to a normal person” (hearing tr at 83).[2]
Holshek and his partners returned to their vehicle and, with the lights still on from the prior car stop, put the car’s siren on. Officer Greaney drove the car, Holshek was in the front passenger seat and Officer Miller sat in the backseat. The officers followed the car and pulled it over after driving about 10 to 20 yards. The officers got out of their car about 10 feet behind the Honda and Holshek approached the passenger side of the car, while his partners approached on the driver’s side. There were four people in the car (three men and one woman, who was seated in the front passenger seat) and Holshek could see all of them moving around inside the car; the people in the front seat turned toward the backseat, while the two people in the backseat “lean[ed] down and into the middle of the car” (hearing tr at 49). Holshek could not see any of the occupants’ hands and, because he did not know what they were doing, feared for his safety. The Honda’s windows were not tinted, the area was lit by streetlamps and buildings and nothing obstructed the interior of the car from view. As Holshek got closer, he focused on defendant, “the larger of the four people” (hearing tr at 18), who was sitting in the rear passenger side seat, closest to Holshek. Defendant was not wearing a jacket, though he had a jacket with him in the backseat. He further saw that defendant *857 was “shuffling,” and “moving his body” (hearing tr at 11). Defendant also lifted his left side in the air and off of the seat, and then lowered himself by “shifting his weight into the middle of the vehicle and coming back over to the right side of the vehicle” in a “quicker” manner (hearing tr at 19).
When Holshek reached the car, all of the car’s occupants stopped moving. He pointed his flashlight into the car and looked down at defendant through the window, who was at that point sitting normally and leaning back. The car was low to the ground and the Officer was “standing on top of him” with “an easy view of what’s inside, going on inside the car” (hearing tr at 20). Holshek saw a small to medium sized bulge at defendant’s right hip, at the waist area.[3] Seeing that defendant had his cell phone in a case on the left side of his hip, outside of his shirt, he believed the bulge on the right hip may have been a weapon. The officers asked the four people to get out of the car for the officers’ safety and Holshek frisked the area of defendant where he had seen the bulge, at his waist area. He felt the butt of a firearm, lifted defendant’s shirt, removed the firearm from defendant’s waistband and put it in his own pocket. The firearm was loaded; a bobby pin had been placed in the cylinder to keep it in place. He asked defendant to lay on the ground and cuffed him; his partners cuffed the other three occupants. Holshek also recovered six live .22 caliber rounds from defendant’s front, left pants pocket. The Sergeant then picked defendant up off of the ground and moved him over to the side. Defendant volunteered, in sum and substance, that the gun belonged to him and the officers should release the other three occupants of the car. His statements were not in response to any questions asked by the officers, the officers’ guns were not drawn at the time he made the statements and no promises or threats were made to him to induce him to make the statements.
Holshek issued the driver a summons, charging disorderly conduct, for “mak[ing] an unreasonable noise” in violation of Penal Law § 240.20 (2), which was the reason the officers stopped the car that night. The officers transported all four people back to the 44th Precinct for investigation. Defendant *858 was given his Miranda warnings and agreed to answer the officers’ questions. He again told the officers that the gun was his and that he was taking responsibility for it. At the precinct, Holshek tested the muffler and found it “very loud” (hearing tr at 84).
Conclusions of Law

Mapp

After he and his fellow officers heard loud noises — music, screeching tires and a loud muffler — emanating from the car defendant was riding in, Holshek stopped the car, believing he had sufficient cause to cite the driver for disorderly conduct. He later issued a summons to the driver for disorderly conduct, in violation of Penal Law § 240.20 (2), for making “unreasonable noise.” The court credits Holshek’s testimony that the car was making an unreasonably loud noise. Penal Law § 240.20 (2) requires, however, not only that a person “make[ ] unreasonable noise,” but that he or she act “with intent to cause public inconvenience, annoyance or alarm, or recklessly creat[e] a risk thereof.” This mens rea requirement imports a “public harm” element into the disorderly conduct statute. (People v Baker, 20 NY3d 354, 359-360 [2013].) Accordingly, whether a person is guilty of disorderly conduct under Penal Law § 240.20 (2) depends not only on the nature of the noise created, but on the attendant circumstances, such as the character of the surrounding area and the number of people attracted. {Id.)
Here, the police only observed the car for a short time, as it traveled a distance of about 40 yards, less than the length of most city blocks. Moreover, the evidence adduced at the hearing was nearly devoid of information about the attendant circumstances, e.g., whether there were any gas stations or businesses (other than a McDonald’s restaurant) in the neighborhood, whether any of these establishments were open at the time (1:00 a.m.), whether there were any people out on the street or whether the area included residential buildings. Accordingly, the evidence was insufficient to give the police reason to believe that any of the occupants of the car intended or risked causing public annoyance, i.e., that the “public harm” aspect of the statute would be satisfied. Accordingly, the stop of the car cannot be justified based on a perceived violation of the disorderly conduct statute.
*859 Holshek’s observations of the car in question did, however, provide probable cause[4] to believe the car had an inadequate muffler, a traffic infraction in violation of section 375 (31) of the Vehicle and Traffic Law. That section of the Vehicle and Traffic Law has no mens rea requirement similar to that in Penal Law § 240.20 and consequently no inherent “public harm” element. Vehicle and Traffic Law § 375 (31) requires, inter alla, that every motor vehicle be equipped “with an adequate muffler and exhaust system ... to prevent any excessive or unusual noise.” The statute’s purpose is to “minimize” noise, and it prohibits any noise in excess of “[w]hat is usual noise in the operation of a car.” (People v Byron, 17 NY2d 64, 67 [1966] [emphasis omitted].) Holshek’s testimony, while not framed in the same terms as the statute, established that there was probable cause to stop the car for a defective muffler. Holshek was clear that the loud muffler was one cause of the “unreasonable noise” the car was making, and “unreasonable” to him meant noise “that would be a bothersome noise to a normal person” (hearing tr at 83). Significantly, Holshek was able to hear the muffler over the loud music coming from the car. And the fact that the car was “pretty beat up” (hearing tr at 90) would suggest the muffler might well have been in disrepair, which would account for the loud noise it was making. These observations were sufficient to justify the stop. That the muffler was unusually loud was confirmed when, later at the precinct, Holshek inspected the muffler and found it “very loud” (hearing tr at 84).
The fact that Holshek stopped the car with the wrong charge in mind does not invalidate the stop. The test for whether a car stop is legally permissible is an objective one. The United States Supreme Court, in Whren v United States (517 US 806, 810 [1996]), held that in general, the decision to stop a motor vehicle is permissible when the police have probable cause to believe that a traffic violation has occurred, regardless of the subjective intent of the officers making the stop. Following Whren, the New York Court of Appeals, in People v Robinson (97 NY2d 341 [2001]), held that a police officer’s reason for making a traffic stop is irrelevant to the lawfulness of the stop. The cases underlying Whren and Robinson involved traffic stops alleged to be pretextual and the issue before the Court in each case was the relevance of the motivations of a police officer to *860 the lawfulness of a traffic stop. As noted, the Courts found the police officers’ motives irrelevant.
To be consistent with Whren and Robinson, a traffic stop should be considered lawful if facts known to the officer gave him or her probable cause to make the stop for an offense, even though there was not probable cause to make a stop for the offense the officer had in mind. This would track the existing rule for arrests. (See e.g. People v Peters, 136 AD2d 750, 751 [2d Dept 1988] [arrest of taxi passenger for “investigation into the ownership of the taxi meter,” an improper basis for arrest, was lawful where arresting officer had information that gave him probable cause to arrest defendant for robbery]; see also People v Bandera, 204 AD2d 340, 341 [2d Dept 1994]; People v Gustafson, 110 AD2d 1055 [4th Dept 1985].) Moreover, if the objective standard is to apply, then a traffic stop must be considered lawful, even though the police officer was unfamiliar with the specific traffic infraction for which, based on information known to the officer, there was in fact probable cause to make a traffic stop. Accordingly, since, based on the objective information known to Sergeant Holshek, he had probable cause to believe the Honda had an unusually loud muffler, in violation of Vehicle and Traffic Law § 375 (31), stopping the car was permissible.[5]
After the car had been stopped, the police could lawfully order defendant out of the car. It has long been recognized that an officer faces an “inordinate risk” when he approaches someone seated in an automobile. (Pennsylvania v Mimms, 434 US 106, 110-111, 111 n 6 [1977].) For that reason, when a car has been lawfully stopped, an officer is allowed to order the occupants out of the car, without any particularized reason to believe any of the occupants are armed. (People v Diaz, 232 AD2d 289 [1st Dept 1996]; see also People v Duncan, 234 AD2d 8 [1st Dept 1996].)
Once defendant was out of the car, Holshek had a right to pat down the area where he saw the bulge. Holshek’s suspicions *861 were aroused when he first noticed the car, as the driver and one of the backseat passengers switched places, suggesting to him that either the driver might be intoxicated or had no driver’s license. More important, as he and his fellow officers approached the car, Holshek saw the passengers, front and back, reaching down toward the center of the car; he became concerned for his safety because he could not see any of the passengers’ hands. Defendant then shifted back to the right and brought his right arm down quickly. These various movements stopped abruptly, as the officers reached the vehicle. Standing next to the car, Holshek noticed a small to medium sized bulge under defendant’s shirt on his right hip, in the waist area, which the Officer believed could be a weapon. He also noticed the cell phone on defendant’s left hip (excluding a phone as the cause of the bulge).
A bulge at the waist has been recognized as the “telltale” sign of a weapon. (People v De Bour, 40 NY2d 210, 221 [1976].) The bulge at defendant’s waist, coupled with his and the other passengers’ furtive movements as the officers approached, gave rise to a reasonable suspicion that defendant was armed and posed a threat to the officers’ safety. Holshek was therefore permitted to conduct a frisk of the area on defendant where he had observed the bulge. (See People v Mims, 32 AD3d 800 [1st Dept 2006] [officer’s observation of a large bulge in the defendant’s crotch area in connection with his earlier furtive movements provided reasonable suspicion justifying a frisk]; People v Duncan at 8-9 [after a five-block pursuit, police stopped a car for a traffic violation and asked a passenger to exit, and “(u)pan viewing a bulge in the passenger’s jacket, the officer was also justified in conducting a frisk to determine whether the (passenger) was armed”].)
When he grabbed the object causing the bulge, Holshek immediately recognized it to be a firearm, which he removed after lifting defendant’s shirt above his waist. Thus, the Officer’s seizure of the firearm was lawful, given that he had a reasonable belief that the object tucked inside defendant’s waistband was a weapon. (See People v Davenport, 9 AD3d 316, 316 [1st Dept 2004] [“An officer patted down defendant and felt a hard and heavy object that he properly removed, since he reasonably feared it to be a weapon based on his familiarity with small handguns”].) The discovery of the firearm provided the Officer with probable cause to arrest defendant. (See People v Mack, 162 AD2d 624, 625 [2d Dept 1990].) Holshek was then permit *862 ted to search defendant’s person incident to his arrest; thus, the recovery of the six live .22 caliber rounds from defendant’s front, left pants pocket was also lawful. (See People v McPherson, 300 AD2d 194 [1st Dept 2002].)

Huntley/Dunaway

Following his arrest, defendant volunteered that the gun belonged to him and said the officers should release the other three occupants of the car. These statements were not made in response to any questions put to him by the officers nor were they the product of any promises or threats, either expressed or implied. Moreover, they were made following a lawful arrest. Although defendant was not free to leave at that point, the statements were not the product of express questioning or its functional equivalent. (See People v Huffman, 61 NY2d 795, 797 [1984], citing People v Bryant, 59 NY2d 786 [1983]; People v Ortiz, 188 AD2d 406, 407 [1st Dept 1992].) Therefore, no Miranda warnings need have been given.
The People did not elicit testimony about a similar statement that defendant made later at the precinct and apparently have no intention of introducing evidence of that statement at trial. Accordingly, the statement made at the precinct is suppressed. (CPL 710.60 [2] [b].)
In all other respects, however, defendant’s motion to suppress is denied.

. On cross-examination, Holshek testified that the car was either a two-door Honda Accord or a Honda Civic. When shown a picture of a two-door Honda Accord, he identified it as the type of car that defendant was traveling in on December 18, 2011.

. Referring to the transcript of the hearing.

. Holshek, when pressed on cross-examination, and then on redirect, described the bulge as curved, like a handle, from a gun or a bottle. While that testimony may reflect Holshek’s recollection more than a year and a half after the incident in question, the court gives those seemingly contradictory descriptive details no credence. The court does credit the rest of Holshek’s testimony about the bulge.

. The First Department has apparently concluded that, under People v Robinson (97 NY2d 341 [2001]), a traffic stop must be based on probable cause. (See People v White, 40 AD3d 535 [1st Dept 2007].)

. Even if Holshek’s mistake was to be characterized as a mistake of law (i.e., a misinterpretation of Penal Law § 240.20 [2]), as defendant contends, it would not fall in the category of mistakes of law that render a resulting stop illegal. This is not a case where the police mistakenly believe that the law prohibits conduct that is actually not illegal. (Cf. Matter of Byer v Jackson, 241 AD2d 943 [4th Dept 1997] [police mistakenly believed traffic laws required driver to use turn signal when turning out of a parking lot].) Here, the conduct that Holshek observed was illegal, although it violated a statute different from the one the Officer had in mind.