People v Hinshaw (2019 NY Slip Op 02252)





People v Hinshaw


2019 NY Slip Op 02252


Decided on March 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, CURRAN, AND WINSLOW, JJ.


1449 KA 18-01077

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ROBERT J. HINSHAW, DEFENDANT-APPELLANT. 






LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (HERBERT L. GREENMAN OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (RYAN M. FLAHERTY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Erie County Court (Sheila A. DiTullio, J.), rendered September 15, 2016. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree and unlawful possession of marihuana. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and unlawful possession of marihuana (§ 221.05). Contrary to defendant's contention, County Court properly refused to suppress physical evidence seized by the police after a traffic stop.
It is well settled that to conduct a traffic stop, police require either probable cause to believe that a traffic infraction has been committed, or "reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (Matter of Deveines v New York State Dept. of Motor Vehs. Appeals Bd., 136 AD3d 1383, 1384 [4th Dept 2016] [internal quotation marks omitted]; see People v Robinson, 97 NY2d 341, 349 [2001]). Here, a New York State Trooper properly stopped the vehicle defendant was driving based on his check of Department of Motor Vehicles (DMV) computer records for the vehicle's license plate number, which revealed that the car had been impounded and thus should have been located in an impound lot (see People v Boomer, 187 AD2d 659, 660-661 [2d Dept 1992], lv denied 81 NY2d 882 [1993]; see generally People v Bushey, 29 NY3d 158, 160 [2017]). The Trooper testified at the suppression hearing that, based on the DMV records, he believed that he was required to conduct an investigation — i.e., stop the vehicle — to determine whether the vehicle had registration problems, the license plates were suspended, the insurance was suspended, or if the vehicle was, in fact, stolen.
Our dissenting colleagues conclude that the Trooper did not have reasonable suspicion to stop defendant's vehicle because the Trooper disregarded cautionary language in the DMV impoundment record stating that it "should not be treated as a stolen vehicle hit[, and] [n]o further action should be taken based solely upon this impounded response." We conclude, however, that the Trooper's testimony that the cautionary language was "generic," inasmuch as it even "comes up with stolen vehicles," and that, based on his experience, he interpreted the impoundment record as requiring him to conduct a further investigation because the vehicle "should not be out on the road," establishes that the stop was not unreasonable. Rather, we conclude that the impoundment record, coupled with the Trooper's explanation of its import, provided reasonable suspicion to stop the vehicle. In disregarding the Trooper's explanation that the cautionary language was "generic," the dissent would obligate us to find unreasonable any stops where that same message appears, irrespective of the facts surrounding the stop. We reject such a categorical determination.
Furthermore, it is of no moment that the DMV impoundment record was later determined to be erroneous, because " [a] mistake of fact . . . may be used to justify a [stop]' " (People v Baker, 87 AD3d 1313, 1314 [4th Dept 2011], lv denied 18 NY3d 857 [2011]; see People v Smith, 1 AD3d 965, 965 [4th Dept 2003]). When an officer makes a mistake of fact or law in conducting a traffic stop, "the relevant question . . . is . . . whether his belief that a traffic violation [or crime] had occurred was objectively reasonable" (People v Guthrie, 25 NY3d 130, 134 [2015], rearg denied 25 NY3d 1191 [2015]; see also id. at 134 n 2). Here, the Trooper's actions in temporarily stopping the car to investigate further were objectively reasonable (see People v Johnson, 178 AD2d 549, 550 [2d Dept 1991], lv denied 79 NY2d 920 [1992]). Once the Trooper smelled burnt marihuana and saw what he believed to be marihuana in plain view, he had probable cause to search the vehicle and its occupants (see People v Walker, 128 AD3d 1499, 1500 [4th Dept 2015], lv denied 26 NY3d 936 [2015]).
All concur except Whalen, P.J., and Centra, J., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent. "[T]he stop of an automobile is a seizure implicating constitutional limitations" and is lawful only if the police have probable cause to believe a traffic infraction has been committed, or "when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (People v Spencer, 84 NY2d 749, 752-753 [1995], cert denied 516 US 905 [1995]). There is no dispute that the State Trooper here did not observe defendant committing any traffic infraction, thus the only issue is whether he had reasonable suspicion that defendant had committed a crime, that is, whether he had " the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand' " (People v Johnson, 143 AD3d 1284, 1285 [4th Dept 2016], lv denied 28 NY3d 1146 [2017], quoting People v Cantor, 36 NY2d 106, 112-113 [1975]). The Trooper — who had not observed defendant engage in suspicious activity — performed a license plate check on his computer, which returned a report with the heading: "Confirm record with originator. The following has been reported as an impounded vehicle. It should not be treated as a stolen vehicle hit. No further action should be taken based solely upon this impounded response" (emphasis added). The Trooper testified that the significance of the notification was that the vehicle should have been in an impound lot and should not have been out on the road and, based solely on that notification, he stopped the vehicle.
The Trooper's interpretation of the cautionary statement in the report as not restricting law enforcement personnel from conducting an investigatory traffic stop is directly at odds with the very language of the report that "[n]o further action should be taken based solely upon this impounded response." Thus, to justify the stop, the Trooper needed to make the inference that the vehicle had been stolen from the impound lot. However, the likelihood of a vehicle being stolen from an impound lot is quite low, and the effort necessary to confirm whether a vehicle has been stolen from impound is minimal; further, the Trooper had the ability to continue following the vehicle while checking to see whether it had been stolen, and to stop the vehicle if its driver violated any traffic law. Contrary to the conclusion of the majority, the question is not whether "the Trooper's actions in temporarily stopping the car to investigate further were objectively reasonable." Rather, the appropriate inquiry is whether the Trooper's belief that a crime occurred was "objectively reasonable" (People v Guthrie, 25 NY3d 130, 134 [2015], rearg denied 25 NY3d 1191 [2015]). We conclude that it was not objectively reasonable for the Trooper to believe that any crime had been committed here to justify the stop of defendant's vehicle.
Moreover, the Trooper's actions are at odds with the constitutional "right to be let alone," which has been recognized as "the most comprehensive of rights and the right most valued by civilized men" (Olmstead v United States, 277 US 438, 478 [1928]
[Brandeis, J., dissenting]). Although that right is not absolute, it should certainly be given more weight than the convenience or routine of law enforcement. County Court therefore erred in refusing to suppress the physical evidence seized after the traffic stop. Accordingly, we would reverse the judgment, vacate the plea, grant that part of defendant's motion seeking to suppress physical evidence recovered after the traffic stop, and remit the matter to County Court for further proceedings on the indictment.
Entered: March 22, 2019
Mark W. Bennett
Clerk of the Court