People v Price (2020 NY Slip Op 04430)





People v Price


2020 NY Slip Op 04430


Decided on August 6, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 6, 2020

110155

[*1]The People of the State of New York, Respondent,
v
Monte A. Price, Appellant.

Calendar Date: June 9, 2020

Before: Lynch, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Mark D. Suben, Cortland, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Jordan J. Yorke of counsel), for respondent.



Devine, J.
Appeal from a judgment of the County Court of Chemung County (Rich Jr., J.), rendered October 14, 2016, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the second degree.
On January 28, 2016 at approximately 5:30 p.m., a patrolling police officer observed a vehicle with four occupants run a stop sign. The officer made a U-turn and tried to catch up to the vehicle, but did not activate his emergency lights. The officer caught up to the vehicle just after it had pulled into a residential driveway and pulled in behind it. He saw the two rear passengers walking away, one, a woman heading toward the front door of the house, and the other, defendant, moving out of sight behind it. The pair ignored the officer's directive to come back to the vehicle, but soon returned upon their own initiative. The officer asked both to identify themselves and learned that the woman was there to visit her uncle. The homeowner came outside around that time and told the officer's partner that he did not know anyone in the vehicle and that he had seen defendant throw something away behind the house. The woman and defendant were then detained and handcuffed, and a loaded revolver was found on the ground behind the house.
Defendant was charged in an indictment with offenses related to the incident and moved to, as is relevant here, suppress the handgun. Following a suppression hearing, County Court declined to do so. Defendant thereafter pleaded guilty to criminal possession of a weapon in the second degree in satisfaction of the indictment. As contemplated by the plea agreement, County Court sentenced defendant to four years in prison and five years of postrelease supervision. Defendant appeals, focusing exclusively upon the denial of his suppression motion.
Deferring to the foregoing factual findings of County Court (see People v Vandebogart, 158 AD3d 976, 978 [2018], lv denied 31 NY3d 1089 [2018]; People v James, 155 AD3d 1094, 1096 [2017], lv denied 30 NY3d 1116 [2018]), we affirm. The officer observed a traffic infraction when the vehicle ran a stop sign (see Vehicle and Traffic Law § 1172 [a]) and was accordingly justified in approaching the vehicle after he had caught up to it (see People v Guthrie, 25 NY3d 130, 134 [2015]; People v Issac, 107 AD3d 1055, 1057 [2013]; People v Coutant, 16 AD3d 772, 774 [2005]). Defendant suggests that the traffic infraction was a pretext for making the approach, but that contention is unpreserved for our review (see People v Arce, 150 AD3d 1403, 1404 [2017], lv denied 29 NY3d 1090 [2017]; People v Durham, 146 AD3d 1070, 1072 [2017], lv denied 29 NY3d 997 [2017]). As a result, although one might reasonably question why the officer, upon seeing a traffic violation of sufficient gravity to cause him to make a U-turn and follow the vehicle, did not put on his siren or emergency lights, and then approached the vehicle with more apparent interest in the passengers than the driver, the record was not developed on the possibility of an ulterior motive for the officer's actions. It follows that the record affords no basis for defendant's speculation as to the officer's motivations. We are, in any event, bound by controlling precedent that those speculative motivations would not render an otherwise proper approach invalid (see People v Robinson, 97 NY2d 341, 348-349 [2001]; People v Spencer, 152 AD3d 863, 867 [2017], lv denied 30 NY3d 983 [2017]).
The officer had discretion to "control the scene in a way that maximize[d]" safety as the approach unfolded (People v Forbes, 283 AD2d 92, 96 [2001], lvs denied 97 NY2d 681 [2001]), could have directed defendant to exit the vehicle had he been in it and, in view of the heightened safety concerns stemming from defendant's refusal to return to the vehicle and brief disappearance behind the house, was free to direct that defendant sit on the hood of the vehicle upon his return (see People v Garcia, 20 NY3d 317, 321-322 [2012]; People v Robinson, 74 NY2d 773, 774-775 [1989], cert denied 493 US 966 [1989]; People v Martin, 156 AD3d 956, 957 [2017], lv denied 31 NY3d 985 [2018]). Shortly thereafter, the officer learned that the homeowner did not know anyone in the vehicle despite their claims and had watched defendant throw something away behind the house. The foregoing created a reasonable suspicion of criminal activity by defendant that warranted his detention, after which the handgun was recovered and afforded probable cause for his arrest (see People v Pines, 99 NY2d 525, 527 [2002]; People v Smith, 168 AD3d 885, 885-886 [2019], lv denied 33 NY3d 1108 [2019]; People v LaFontant, 46 AD3d 840, 842 [2007], lv denied 10 NY3d 841 [2008]). Thus, even accepting that defendant had standing to seek suppression of a handgun (but see People v Habeeb, 177 AD3d 1271, 1271-1272 [2019], lv denied 34 NY3d 1159 [2020]), suppression was not called for.
Pritzker and Reynolds Fitzgerald, JJ., concur.
Lynch, J.P. (concurring).
We respectfully concur. In our view, when defendant discarded the handgun in the backyard, he did so of his own accord and thus abandoned any right to challenge the seizure of the handgun by the police (see People v Boodle, 47 NY2d 398, 402-404 [1979], cert denied 444 US 969 [1979]). For this reason, we agree that County Court properly denied defendant's suppression motion. Ordinarily, that would end the matter, but further comment is warranted to address the majority's premise that there was a founded suspicion of criminality that justified the detainment of defendant on the hood of his vehicle — a premise with which we disagree.
We agree with the majority that the police have probable cause to stop a vehicle based on a traffic infraction. Accepting, as County Court found, that a traffic violation took place, the concern here is that the involved officer (hereinafter the officer) did not conduct a routine traffic stop and provided no plausible explanation for failing to do so. The suppression hearing testimony shows that, as the officer was proceeding northbound on Sullivan Street in the City of Elmira, Chemung County, and approaching the Harper Street intersection, he observed a vehicle, a Chevy, in which defendant was a backseat passenger, turning from Harper Street onto Sullivan Street. The officer explained that he saw the Chevy "approach the stop sign, slow but never c[o]me to a complete stop" and then it "rolled through the stop sign and turned to travel southbound on Sullivan [Street]." When the Chevy and the patrol vehicle passed each other, the officer observed that there were four occupants in the Chevy. The officer proceeded to make a U-turn and began to, in his words, "attempt to catch up to the [Chevy]." He did not, however, activate his emergency strobe lights, but continued to follow, noting that there was another vehicle between his patrol vehicle and the Chevy. Considering the routine nature of the traffic infraction, it is troubling that no convincing explanation was provided for why the officer did not simply activate his lights and pull over the Chevy. The intervening vehicle was really of no moment for, had the officer activated the lights, it is fair to say that both the intervening vehicle and the Chevy, in turn, would have pulled over. In other words, the facts presented demonstrate that the officer could have conducted a routine traffic stop. The perplexing question is why he failed to do so — a question he never convincingly answers.
Instead, the ensuing events escalate when the officer and a second officer blockade the Chevy with their patrol cars in the driveway of a house (see People v Jennings, 45 NY2d 998, 998 [1978]). We recognize that the officer briefly lost sight of the Chevy before spotting it in the driveway. Contrary to County Court's assessment that the Chevy must have been speeding, the officer confirmed on cross-examination that he did not notice that the Chevy was traveling at an excessive speed. The officer testified that, observing defendant and the female backseat passenger — both of whom are black — walking towards the house, he called out for the two to return to the Chevy, but noted that they "didn't appear to turn around, no response at all." This limited explanation leaves open the question of whether either defendant or the female passenger even heard the officer. Their lack of response may only speculatively be characterized as a "refusal to return to the vehicle." Moreover, under the circumstances presented, defendant was under no obligation to respond (see People v Holmes, 81 NY2d 1056, 1057-1058 [1993]). Only seconds later, after going to the front door of the house, the female passenger walked directly back to the Chevy, where she explained to the officer that this was her uncle's house — which turned out to be a false statement. Within 30 seconds, defendant also walked back to the Chevy and provided the officer with his name — which was also later determined to be false — and his date of birth. That said, as of that moment, the officers only knew of a simple traffic infraction and, yet, the officer directed the female passenger to sit back in the Chevy and then directed defendant to sit on the hood of the Chevy.
Again, the question is why the officers reacted in such a way when the context is a simple traffic infraction and the circumstances do not reflect a heightened safety concern. We recognize that the officer expressed a safety concern based on defendant walking behind the house (that there was a weapon behind the house and that a confrontation would ensue), but he also acknowledged that he did not observe anything in defendant's hands when defendant returned to the car. So what really is going on here? In his brief, defendant maintains that the "police conduct . . . was motivated primarily by race." Based on the entire sequence, one unfortunate conclusion that may reasonably be drawn is that the actions of the officers may have been, at least implicitly, motivated by the race of the Chevy occupants.
And that is the reason that we write separately, for it is essential that this Court emphasize that any such motivation will not be countenanced. We are certainly mindful that the Court of Appeals in People v Robinson (97 NY2d 341 [2001]) held that a police officer may stop a vehicle where there is probable cause to believe that the driver has committed a traffic infraction, even when the primary reason for the stop is to conduct another investigation, without violating either US Constitution Fourth Amendment or NY Constitution, article I, § 12. There is, however, a marked difference between the asserted factual pretext to investigate a robbery in Robinson and the concern raised here, i.e., that undertones of racial bias may explain the arresting officer's failure to just make a routine traffic stop. Although the outcome in this particular case will not change, we would be remiss in not taking this opportunity to emphasize that bias, racial or otherwise, will not be allowed to legitimatize the unconstitutional intrusion upon any citizen's freedom of movement.
Aarons, J., concurs.
ORDERED that the judgment is affirmed.