[38 NYS3d 880]

Magdalena Garcia, Individually and as Parent and Natural Guardian of P.S., an Infant, et al., Respondents, v New York City Department of Health and Mental Hygiene et al., Appellants.

First Department, October 6, 2016

**APPEARANCES OF COUNSEL**

*Zachary W. Carter, Corporation Counsel*, New York City (*Benjamin Welikson* and *Cecelia Chang* of counsel), for appellants.

*Siri & Glimstad LLP*, New York City (*Aaron Siri* of counsel), for respondents.

**OPINION OF THE COURT**

RICHTER, J.

In this appeal, we are asked to decide whether the New York City Board of Health properly adopted regulations mandating the influenza vaccine for children attending certain child care, prekindergarten, and kindergarten programs. Unlike state immunization statutes, the regulations do not prohibit child care facilities and schools from admitting unvaccinated children. Instead, a facility or school can, in effect, opt out of the vaccination requirement by paying a monetary fine. Further, the regulations do not apply to all child care facilities, but only to a small fraction of those operating within the city. We hold that although the regulations are not preempted by state law, they are nevertheless invalid because the particular scheme adopted by the Board of Health exceeded the scope of its regulatory authority.

Defendant-respondent New York City Department of Health and Mental Hygiene (the Department of Health) is a city agency tasked with regulating all matters affecting health in New York City (NY City Charter § 556). The Department of Health has jurisdiction over, inter alia, reporting, controlling and providing services for communicable diseases affecting public health (NY City Charter § 556 [c] [2]; [d] [6]). Defendant-respondent New York City Board of Health (the Board of Health), a part of the Department of Health (together, respondents), "is empowered to amend the [New York City] Health Code with respect to all matters to which the power and authority of [the Department of Health] extend" (*Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*, 110 AD3d 1, 4 [2013], *affd* 23 NY3d 681 [2014]; *see* NY City Charter §§ 553, 558).

Article 47 of the New York City Health Code gives the Department of Health regulatory authority over certain public and private child care programs for children under six years old. The Department of Health's authority under article 47, however, does not extend to "[a]ny State-regulated informal child care program, a group family or family day care home, or school age [after-school] child care program, or a foster care program" (24 RCNY 47.01 [c] [2] [A]). Article 43 of the New York City Health Code contains health and safety standards for public and private school-based prekindergarten and kindergarten programs for children ages three through five (24 RCNY 43.03).

The New York State Department of Health is a state agency charged with, inter alia, "supervis[ing] the work and activities of the local boards of health" and "supervis[ing] the reporting and control of disease" (Public Health Law § 201 [1] [a], [c]). Public Health Law § 2164 (2) (a) requires all children, ages two months to 18 years, in public and private child care programs and schools, to be immunized against measles, mumps, rubella and other specified diseases. Exemptions exist if a vaccine is detrimental to the child's health or if the child's parent or guardian has sincere religious beliefs against vaccinations (Public Health Law § 2164 [8], [9]). A school shall not permit any child to attend, in excess of 14 days, without proof of the required immunizations (Public Health Law § 2164 [7] [a]). Public Health Law § 2165 similarly requires that college students be immunized against measles, mumps and rubella. Both articles 43 and 47 of the New York City Health Code likewise require children covered under those articles to be immunized against those diseases specified in Public Health Law § 2164.

On December 11, 2013, following notice and a public hearing, the Board of Health adopted a resolution amending articles 43 and 47 of the New York City Health Code with respect to vaccinations for influenza (the flu). The amendments require that all children, between the ages of 6 and 59 months, who attend child care and school-based programs under the Department of Health's jurisdiction be vaccinated against the flu each year (24 RCNY 43.17 [a] [2] [B] [i]; 47.25 [a] [2] [B] [i]). Like the state immunization law, the amendments contain exemptions if the vaccine adversely affects the health of the child or for religious grounds.

Under the amendments, the child care provider or school may, but is not required to, refuse to allow a child who was not vaccinated against the flu to attend (24 RCNY 43.17 [a] [2] [B] [ii]; 47.25 [a] [2] [B] [ii]). However, if a child care provider or school chooses to allow unvaccinated nonexempt children to attend, it would be subject to a fine for each child not meeting the vaccination requirement (24 RCNY 43.17 [a] [2] [C]; 47.25 [a] [2] [C]). The amount of the fine ranges anywhere from $200 to $2,000 (24 RCNY 3.11 [a]). The amendments also provide that all children shall have such additional immunizations as the Department of Health may require (24 RCNY 43.17 [a] [2] [D]; 47.25 [a] [2] [D]).

In November 2015, plaintiffs-petitioners (petitioners) commenced this hybrid CPLR article 78 proceeding and declara-

tory judgment action against the Department of Health, its commissioner, and the Board of Health. Petitioners are five working mothers, suing individually and on behalf of their children, who are enrolled in New York City child care or preschool programs. Petitioners object to having to vaccinate their young children against the flu, and several have been advised by specific schools that their children would be barred from attending if they did not receive the vaccine.

The petition seeks, pursuant to article 78, to permanently enjoin respondents from implementing or enforcing those parts of the amendments that mandate the flu vaccination and permit child care providers and schools to refuse to allow unvaccinated children to attend (24 RCNY 43.17 [a] [2] [B]; 47.25 [a] [2] [B]) (the challenged amendments). In the alternative, the petition seeks a declaration that certain provisions of the New York City Charter violate the separation of powers doctrine and are unconstitutional, to the extent that they are found to have authorized respondents to promulgate the challenged amendments.

Petitioners moved, by order to show cause, for a preliminary and permanent injunction enjoining respondents from implementing or enforcing the challenged amendments, or, alternatively, for the declaration sought in the petition. Petitioners argued, inter alia, that the challenged amendments were preempted by the State Public Health Law, and that the Board of Health exceeded the scope of its regulatory authority and engaged in lawmaking by adopting the challenged amendments. Respondents cross-moved to dismiss for, inter alia, failure to state a cause of action.

In a decision entered December 16, 2015, the motion court denied the cross motion to dismiss, and granted petitioners' motion to permanently enjoin respondents from implementing and enforcing the challenged amendments, finding that they conflicted with the Public Health Law (2015 NY Slip Op 32601[U] [Sup Ct, NY County 2015]). The court's decision did not address petitioners' argument that the Board of Health exceeded its regulatory authority.[1] Respondents now appeal and we affirm, although on different grounds.

---

1. Because the motion court granted the permanent injunction requested by petitioners, which was the relief sought in the article 78 petition, it did not reach petitioners' plenary claim for declaratory relief, which was asserted in the alternative to the article 78 claim.

The motion court improperly found that the Board of Health's adoption of the challenged amendments was preempted by state law.

"The Court of Appeals has recognized two ways in which state law may preempt local law: through the doctrine of (1) field preemption, 'when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility,' or (2) conflict preemption, 'when a local government adopts a law that directly conflicts with a State statute'" (*Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v City of New York*, 142 AD3d 53, 58 [1st Dept 2016], quoting *DJL Rest. Corp. v City of New York*, 96 NY2d 91, 95 [2001]).

Thus, "[w]here the State has demonstrated its intent to preempt an entire field and preclude any further local regulation, local law regulating the same subject matter is considered inconsistent and will not be given effect" (*Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500, 505 [1991]). Even where field preemption is absent, conflict preemption "'occurs when a local law prohibits what a state law explicitly allows, or when a state law prohibits what a local law explicitly allows'" (*New York State Assn. for Affordable Hous. v Council of the City of N.Y.*, 141 AD3d 208, 215 [1st Dept 2016], quoting *Matter of Chwick v Mulvey*, 81 AD3d 161, 168 [2d Dept 2010]).

There is no field preemption here because the State has not assumed full regulatory responsibility over the entire field of disease control and vaccination. The Court of Appeals has recognized that "'the main business of safeguarding the public health has always of necessity been done by local boards or officers through sanitary by-laws or ordinances'" (*Grossman v Baumgartner*, 17 NY2d 345, 351 [1966], quoting *People v Blanchard*, 288 NY 145, 147 [1942]). The New York State Constitution grants local governments the power to enact laws, not inconsistent with the provisions of the Constitution or any general law, relating to the "safety, health and well-being of persons . . . therein" (NY Const, art IX, § 2 [c] [ii] [10]; *see also* Municipal Home Rule Law § 10 [1] [ii] [a] [12] [same]). This provision "confers broad police power upon local government relating to the welfare of its citizens" (*New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987] [footnote omitted], *affd* 487 US 1 [1988]).

Rather than demonstrating an intent to preempt the field of disease control and vaccination, the state legislature has

recognized that local government plays an important role in those areas. Under Public Health Law § 308 (d), local boards of health are empowered to make regulations "deem[ed] necessary and proper for the preservation of life and health." Public Health Law § 228 (3) allows localities to enact laws and regulations, provided that they "comply with at least the minimum applicable standards set forth in the [State health] code." Thus, local governments have the authority to adopt local health regulations subject only to minimum statewide standards. In other words, state law sets the floor, not the ceiling, for local health regulations.

That the State did not intend to preempt the field is further evident from the legislature's enactment of section 17-109 of the Administrative Code of the City of New York, which specifically deals with local authority over vaccinations. Subdivision (a) of that section gives the Department of Health the power to produce vaccines and antitoxins, and "add necessary additional provisions to the [New York City] health code in order to most effectively prevent the spread of communicable diseases." Subdivision (b) further permits the Department of Health to "take measures, and supply agents and offer inducements and facilities for general and gratuitous vaccination." By enacting this provision, the legislature expressly delegated to the Department of Health some responsibilities in the field of disease control and vaccination.

■ Petitioners have failed to establish that the State has "clearly evinced a desire to preempt an entire field thereby precluding any further local regulation" (*Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 97 [1987]). Collectively viewed, the State Constitution, Municipal Home Rule Law § 10, Public Health Law §§ 228 (3) and 308 (d), and Administrative Code § 17-109 demonstrate that the State has not assumed "full regulatory responsibility" over the field of disease control and vaccination, and in fact has ceded some responsibility over those matters to the Department of Health (*Patrolmen's Benevolent Assn.*, 142 AD3d at 58). Thus, the adoption of the challenged amendments is not prohibited under the doctrine of field preemption.

■ Nor are the challenged amendments barred under principles of conflict preemption. Contrary to petitioners' contention, the Board of Health's regulations do not directly conflict with Public Health Law § 2164. As noted earlier, that section requires all children in New York State to receive

certain enumerated vaccinations, and forbids unvaccinated children from attending school. The absence of the flu vaccination from the mandated list does not present a conflict because the statute contains no language prohibiting localities from requiring additional vaccinations not mandated by the State (*see Patrolmen's Benevolent Assn.*, 142 AD3d at 62 ["no conflict exists where a local law prohibits something that might generally be considered permissible by virtue of state law's silence on an issue"]). Indeed, the mandating of an additional vaccine is consistent with the previously-noted authority granted to local governments, and poses no conflict with the floor the legislature set in section 2164 (*see Jancyn Mfg. Corp.*, 71 NY2d at 97 ["The fact that both the State and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict"]).

Likewise, the challenged amendments do not directly conflict with Public Health Law §§ 206 and 613. Section 206 addresses the general powers and duties of the Commissioner of the State Department of Health, and section 613 authorizes the Commissioner to develop immunization and educational programs for, inter alia, the flu. Although both statutes state that "[n]othing in this [provision] shall authorize mandatory immunization of adults or children, except as provided in [Public Health Law §§ 2164 and 2165]," that prohibition applies, and is directed, to state immunization efforts. Nothing in either statute expressly or impliedly limits the authority of local governments to implement additional vaccination requirements (*see Matter of Chwick v Mulvey*, 81 AD3d at 169 ["without a 'head-on collision' between the (state law) and the (local) ordinance, conflict preemption does not apply"], quoting *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d 761, 764 [1989]).

Although the challenged amendments are not preempted by state law, we find that the Board of Health exceeded the scope of its regulatory authority by adopting them. " 'The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation' " (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003], quoting *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). While the legislative branch may grant

an administrative agency the authority to promulgate regulations in furtherance of a legislative mandate, it "may not constitutionally cede its fundamental policymaking responsibility to [the] agency" (*id.* at 864; *see Boreali v Axelrod*, 71 NY2d 1, 9 [1987] [administrative agencies cannot engage in "inherently legislative activities"]).

In *Boreali*, the Court of Appeals set forth a framework for determining whether an administrative agency has crossed "the difficult-to-define line between administrative rule-making and legislative policy-making" (71 NY2d at 11). The *Boreali* factors, as recently described by the Court of Appeals, are

> "whether (1) the agency did more than balanc[e] costs and benefits according to preexisting guidelines, but instead made value judgments entail[ing] difficult and complex choices between broad policy goals to resolve social problems; (2) the agency merely filled in details of a broad policy or if it wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance; (3) the legislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve; and (4) the agency used special expertise or competence in the field to develop the challenged regulation[ ]" (*Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv.*, 27 NY3d 174, 179-180 [2016] [internal quotation marks and citations omitted]; *see also Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*, 23 NY3d 681, 692-693 [2014]; *Boreali*, 71 NY2d at 12-14).

The four *Boreali* factors are not "discrete, necessary conditions that define improper policymaking by an agency" (*New York Statewide Coalition*, 23 NY3d at 696). Nor should they be "rigidly applied" whenever an agency is alleged to have engaged in improper lawmaking (*id.*). Instead, they are "overlapping, closely related factors that, taken together, support the conclusion that an agency has crossed" "the line into legislative territory" (*id.* at 696-697). The *Boreali* factors "are not mandatory, need not be weighed evenly, and are essentially guidelines for conducting an analysis of an agency's exercise of power"

(*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d 600, 612 [2015]). Thus, an agency cannot turn back a challenge to a proposed regulation simply by showing that a *Boreali* factor is absent (*New York Statewide Coalition*, 23 NY3d at 697).

Applying these principles, we conclude that by adopting the challenged amendments, the Board of Health "cross[ed] the line into legislative territory" (*New York Statewide Coalition*, 23 NY3d at 696). With respect to the first *Boreali* factor, the Board of Health did not merely balance costs and benefits, but instead improperly made value judgments by creating a regulatory scheme with exceptions not grounded in promoting public health. As noted earlier, the challenged amendments do not prohibit a child who was not vaccinated against the flu from attending child care or school, but provide only that the facility "*may*" refuse entry to the unvaccinated child (24 RCNY 43.17 [a] [2] [B] [ii] [emphasis added]; 47.25 [a] [2] [B] [ii] [emphasis added]). Instead, the provider or school can, in effect, opt out of the vaccination requirement and allow an unvaccinated child to attend, upon payment of a monetary fine (24 RCNY 43.17 [a] [2] [C]; 47.25 [a] [2] [C]).

This opt-out provision stands in stark contrast to section 2164 (7) (a) of the State's Public Health Law, which, logically, forbids children from remaining in school without proof of the immunizations required under that statute. The challenged amendments, on the other hand, allow a child care provider or school to make an economic choice to pay a fine rather than expel a student and lose a year's worth of tuition. Creating a policy whereby unvaccinated children are allowed to stay in child care or school flies in the face of respondents' claim that the challenged amendments are meant to promote the public health by reducing transmission of the flu virus. Not surprisingly, respondents are unable to point to any health-related reason supporting the opt-out provision.

That the Board of Health made improper policy choices is further evidenced by the fact that the flu shot requirement applies only to the 2,283 larger licensed child care facilities in New York City that the Board regulates, and does not cover the 9,241 providers that fall under state regulation.[2] Thus, less than 20% of child care facilities in the City must abide by the

---

2. As noted earlier, the flu vaccine is required for children in only those child care facilities the Board of Health regulates under article 47 of the New York City Health Code.

flu vaccine mandate. Further, the vaccine requirement does not apply to more than 20,000 legally exempt child care providers.[3] Respondents maintain that the Board of Health targeted its efforts only on those child care providers it licenses because it already possesses regulatory expertise with respect to those facilities. But that rationale is based on administrative convenience, not health-related concerns. The decision to place economic burdens on only a fraction of licensed child care facilities, albeit the larger ones, while not placing the same burdens on other facilities shows that the Board of Health was "making policy, and therefore was operating outside of its proper sphere of authority" (*Matter of Ahmed v City of New York*, 129 AD3d 435, 440 [1st Dept 2015] [internal quotation marks omitted]; *see Boreali*, 71 NY2d at 12 [finding proper balance between health concerns and cost "is a uniquely legislative function"]).

The second *Boreali* factor—whether the agency "wrote on a clean slate" (*Boreali*, 71 NY2d at 13)—tilts in favor of respondents. There is no basis to find that the challenged amendments were adopted "without benefit of legislative guidance" (*id.*). As noted earlier, section 17-109 of the Administrative Code of the City of New York gives the Department of Health the power to "add necessary additional provisions to the [New York City] health code in order to most effectively prevent the spread of communicable diseases," and "take measures . . . for general and gratuitous vaccination." Because there is an express statutory delegation to the Department of Health of responsibilities for vaccination of city residents, it cannot be said that the Board of Health wrote on a "clean slate."

The third *Boreali* factor—whether the legislature has unsuccessfully tried to reach agreement on this issue—presents a close question, and does not clearly weigh in either petitioners' or respondents' favor. Although petitioners point to the legislature's rejection of a bill mandating the flu vaccination for children, respondents maintain that that sole piece of legislation is insufficient to show "repeated failures by the Legislature to [reach] an agreement" in the area where the Board of Health acted (*Boreali*, 71 NY2d at 13). We also note that neither party points to any effort by the New York City Council to pass a law requiring the flu vaccine. Nevertheless, the subject of mandatory vaccinations for a different malady— meningococcal disease—has been before the legislature several

---

**3.** Respondents do not challenge any of petitioners' figures, which are supported by the record.

times, and was approved only after years of repeated failures. Further, it took several years for the legislature to agree on a bill to merely *encourage* flu vaccination for children (L 2010, ch 36, § 1; Public Health Law § 613 [1]).

The fourth *Boreali* factor—whether the agency used special expertise in its field—weighs in favor of petitioners. In developing the challenged amendments, the Board of Health unquestionably relied on its expertise in the health field to conclude generally that the mandatory vaccination of children furthers public health goals. The notice of adoption of the challenged amendments sets forth the scientific rationale for mandatory flu vaccination, and cites to a number of studies showing the safety and effectiveness of the flu vaccine in protecting the health of children, their families and communities. Further, the notice points out that, based on scientific evidence, the CDC's Advisory Committee on Immunization Practices recommends that everyone six months of age or older receive an annual flu vaccination. Nevertheless, this *Boreali* factor supports petitioners, because no special expertise was relied upon to develop the unique scheme that was adopted here. The notice of adoption does not contain any health-related basis supporting either the opt-out provision or the decision to apply the vaccination requirement to only a fraction of the City's child care facilities. Likewise, the affidavit of the First Deputy Commissioner of the Department of Health, submitted before the motion court, is silent on these issues. Although we do not dispute that this type of health-related regulation can be based upon medical and scientific considerations, respondents have not established how this specialized knowledge led to this specific regulation.

In sum, two of the *Boreali* factors weigh in favor of petitioners, one leans in favor of respondents, and one does not support either party. As noted earlier, however, the factors are not "necessary conditions," should not be "rigidly applied" (*New York Statewide Coalition*, 23 NY3d at 696), and "need not be weighed evenly" (*Greater N.Y. Taxi Assn.*, 25 NY3d at 612). The *Boreali* factors, when viewed together, support the conclusion that by adopting the challenged amendments, particularly in view of the opt-out provision and the uneven application to the various city child care providers, the Board of Health was making policy and impermissibly crossed into the legislative sphere. By this decision, we do not conclude that the Board of Health is powerless to require vaccination of city residents, including

young children. Indeed, section 17-109 of the Administrative Code of the City of New York suggests otherwise. Our only holding is that the particular scheme adopted here was not primarily grounded in science or health, but involved improper policy decisions, and thus did not constitute appropriate rule-making.[4]

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Manuel J. Mendez, J.), entered December 16, 2015, granting plaintiffs-petitioners' motion to permanently enjoin defendants-respondents from implementing and enforcing certain amendments to the New York City Health Code (24 RCNY 43.17 [a] [2] [B]; 47.25 [a] [2] [B]), and denying defendants-respondents' cross motion to dismiss the petition, should be affirmed, without costs.

FRIEDMAN, J.P., ANDRIAS, SAXE and KAHN, JJ., concur.

Judgment, Supreme Court, New York County, denominated an order, entered December 16, 2015, affirmed, without costs.

---

4. The order appealed from, which is marked "Final Disposition," granted the relief sought in the article 78 petition in its entirety, enjoining the enforcement of the challenged amendments; thus, it is a final order, appealable as of right (CPLR 5701 [a]; see Matter of Pelaez v Waterfront Commn. of N.Y. Harbor, 48 NY2d 1021, 1022-1023 [1980]).