People v Lopez (2025 NY Slip Op 51278(U))

[*1]

People v Lopez

2025 NY Slip Op 51278(U)

Decided on August 14, 2025

Supreme Court, New York County

Drysdale, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 14, 2025
Supreme Court, New York County

The People of the State of New York,

against
Darrell Lopez, Defendant.

IND-70113-25

For the Defendant: Mr. Harlan Greenberg, Esq., Law Offices Of Harlan Greenberg, P.C.
For the People: ADA Andrea Kimmel, New York County District Attorney's Office

Althea E.M. Drysdale, J.

The Defendant moves to dismiss Count 1 of the indictment charging the Defendant with New York City Administrative Code §19-190(b) pursuant to CPL § 210.20(h), arguing that there exists a jurisdictional or legal impediment to the conviction of the Defendant for the offense charged. Specifically, the Defendant argues that the New York State Vehicle and Traffic Law prohibits cities, municipalities and other governmental subdivisions from passing legislation that further criminalizes vehicle and traffic offenses, and that VTL § 155 and VTL § 1880 preempt New York City Administrative Code § 19-190(b). The People oppose, arguing that the New York State Vehicle and Traffic Law expressly grants New York City the authority to regulate traffic infractions through criminal sanctions.
Summary of Allegations and Procedural History
Defendant Darrell Lopez is charged in relation to a June 13, 2024 incident where a grey Nissan Pathfinder allegedly operated by the Defendant struck and killed a pedestrian who was crossing the street with the right of way in a crosswalk. Evidence of the collision was presented to a Grand Jury, which voted an indictment charging the Defendant with one count of Failure to Yield to a Person with the Right of Way, in violation of New York City Administrative Code §19-190(b), and one count of Failure of a Driver to Exercise Due Care, in violation of Vehicle and Traffic Law §1146(c)(1).

Conclusions of Law

After almost 4,700 traffic-related fatalities within a 14-year period, New York City launched a "Vision Zero"[FN1]
initiative which included the enactment of AC §19-190, commonly [*2]known as the "Right of Way" law. People v. Torres, 37 NY3d 256, 261 (2021). "That law makes it a misdemeanor for a driver, while 'fail[ing] to exercise due care,' to make 'contact with' a pedestrian or bicyclist who has the 'right of way' and thereby cause 'physical injury.'" Id. citing NYC AC § 19-190 [a]-[c].
In Torres, the New York State Court of Appeals considered the claims of two Defendants challenging New York City's Right of Way law, arguing that "the Right of Way Law's ordinary negligence mens rea violates due process because the standard is both impermissibly vague and legally insufficient for imposing criminal liability." Id. The Defendants further argued that "the Right of Way Law impermissibly punishes more severely the same conduct proscribed by Vehicle and Traffic Law § 1146, and that the Right of Way Law's use of ordinary negligence as a culpable mental state is prohibited by article 15 of the Penal Law." Id.
The Court of Appeals upheld the Defendants' conviction for violating NYC AC § 19-190, finding that the local ordinance did not conflict with VTL § 1146, which charges a traffic infraction for similar conduct. The Court of Appeals explained that while a local government cannot "enact or enforce any local law . . . in conflict with" state Vehicle and Traffic Law, New York City is authorized by this state law "to pass laws relating to . . . traffic on or pedestrian use of any highway, including right of way of vehicles and pedestrians.' Id. at 268. The Court expressly held that "[t]he Right of Way Law falls within this delegation of authority" and is thus not preempted by state law. Id.
In support of his motion to dismiss, the Defendant relies heavily on the non-binding concurring opinion of Chief Justice Wilson in Torres. In his concurrence, Justice Torres joins the majority's decision in full, but opines that, "the basis for the City's authority to criminalize traffic infractions is unclear: New York's Vehicle and Traffic Law may bar cities from attaching criminal sanctions to certain traffic violations." Torres at 269-70 (Wilson, J. concurring). Justice Wilson further stated that, "there remains an open question, unresolved by this case, as to whether cities or other political subdivisions of the State can criminalize violations that the State has designated as traffic infractions." Id. at 273 (Wilson, J. concurring).
The "home rule" provision" of the New York constitution gives local municipalities "broad police powers . . . relating to the welfare of [their] citizens" so long as local governments do not adopt "laws that are inconsistent with the Constitution or state statutes." Patrolmen's Benevolent Association of the City of New York, Inc. v. City of New York, 35 N.Y.S.3d 314, 317 (NY App. Div 2016). The Court of Appeals has established that state law can preempt local law either through field preemption or conflict preemption. Id. Field preemption arises when "the State Legislature has assumed full regulatory responsibility" of a field of regulation. Id.
A state legislatures' intent to occupy a field of regulation may be express or "implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme." Police Benevolent Association of the City of New York, Inc. v. City of New York, 224 N.E.3d 522, 528 (NY 2023). If the state has adopted "a comprehensive and detailed regulatory scheme" regarding a field, then the "local interest must yield to that of the State." Garcia v. New York City Department of Health of Mental Hygiene, 106 N.E.3d 1187, 1200 (NY [*3]2018).
Conflict preemption occurs "when a local government adopts a law that directly conflicts with a State statute." Patrolmen's Benevolent Association, 35 N.Y.S.3d at 317. However, the "mere fact" that a local law may address the same or similar matters addressed by state law "does not render the local law invalid." Police Benevolent Association, 224 N.E.3d at 530. The Court of Appeals has held that a local law directly conflicts with state law "where local laws prohibit what would be permissible under state law, or impose prerequisite additional restrictions on rights under state law, so as to inhibit the operation of the State's general laws." Garcia, 106 N.E.3d at 1200. However, the Court of Appeals has "also cautioned that reading conflict preemption principles too broadly risks rendering the power of local governments illusory." Id. Conflict preemption typically only arises "when the State specifically permits the conduct prohibited at the local level." Id. The "key question" in addressing conflict preemption is "what did the Legislature intend?" Id. at 202. Local laws addressing "legitimate concerns . . . will not be preempted if their enforcement only incidentally infringes on a preempted field." Patrolmen's Benevolent Association, 35 N.Y.S.3d at 318.
Here, this Court finds no legal basis for finding that the New York State Vehicle and Traffic Law prohibits cities, municipalities and other governmental subdivisions from passing legislation that further criminalizes vehicle and traffic offenses. VTL §1640(a)(16) states, in pertinent part, that "[t]he legislative body of any city or village, with respect to highways . . . may by local law, ordinance, order, rule or regulation: [a]dopt such additional reasonable local laws, ordinances, orders, rules and regulations with respect to traffic as local conditions may require subject to the limitations contained in the various laws of this state." VTL §1642(a) states, in pertinent part, that "the legislative body of any city having a population in excess of one million, may by local law, ordinance, order, rule, regulation or health code provision prohibit, restrict or regulate traffic on or pedestrian use of any highway [...] in such city." Here, it appears as though New York City has done just that by implementing a local law to address the staggering number of pedestrian deaths caused by drivers within the five boroughs. The Court further finds no legal basis for the premise that VTL § 155 and VTL § 1880 preempt New York City Administrative Code § 19-190(b). In fact, the Torres Court expressly ruled that they do not. Torres at 266.
For the reasons stated herein, the Defendant's motion to dismiss Count 1 of the indictment is denied.
This constitutes the Decision and Order of the Court.
Dated: August 14, 2025
New York, New York
Hon. Althea E.M. Drysdale, A.J.S.C.

Footnotes

Footnote 1: People v. Torres, 37 NY3d 256, 273 at FN.1 (2021) ("Vision Zero" is an approach to road safety, developed in Sweden, based upon the principle that it "can never be ethically acceptable that people are killed or seriously injured when moving within the road transport system" (Claes Tingvall & Narelle Haworth, Monash University Accident Research Centre, Vision Zero—An Ethical Approach to Safety and Mobility [1999] [emphasis omitted], available at 
https://www.monash.edu/muarc/archive/our-publications/papers/visionzero [last accessed Sept. 19, 2021]).)